UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| LORENA PRUITT, | Plaintiff, |
| v. | Civil Action No. 3:17-cv-742-DJH-RSE |
| HAZELWOOD TRAINING FACILITY, et al., | Defendants. |

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Lorena Pruitt, proceeding pro se, brings this employment-discrimination action against Defendants Hazelwood Training Facility, Cabinet for Health and Family Services (CHFS),[1] Jay Klein, Beth Feddersen, Sueellen White, and Tarron Ray.[2] (D.N. 23; *see also* D.N. 1) In her amended complaint, Pruitt asserts claims for discrimination, hostile work environment, and retaliation based on race and gender under Title VII of the Civil Rights Act; retaliation under 42 U.S.C. § 1981; and disability discrimination under the Americans with Disabilities Act (ADA). (D.N. 23, PageID # 174) Defendants Hazelwood, CHFS, Klein, Feddersen, and White have filed joint motions to dismiss all claims either for lack of subject-matter jurisdiction pursuant to Federal

---

[1] Hazelwood Training Facility "is a state facility operated by the Cabinet [for Health and Family Services]." *Jones v. Hazelwood Ctr.*, No. 2007-CA-000808-MR, 2008 WL 4091651, at \*1 (Ky. Ct. App. Sept. 5, 2008); *see also McDonald v. Commonwealth*, No. 2012-CA-001555-WC, 2014 WL 689048, at \*1 n.1 (Ky. Ct. App. Feb. 21, 2014) ("The Hazelwood Center is a mental health facility operated by the Commonwealth."). The Court will therefore consider the claims against Hazelwood and the claims against the CHFS together, as these two defendants are one in the same for purposes of this lawsuit.

[2] It appears that Defendant Ray was only recently served with process. (*See* Docket No. 30) The other defendants nonetheless urge the Court to dismiss the entire complaint, arguing that Ray is entitled to the same defenses that defeat Pruitt's claims against the other individual defendants. (D.N. 24, PageID # 186, 211-12) As explained below, the Court declines to *sua sponte* dismiss Pruitt's claims against Ray at this time.

1

Rule of Civil Procedure 12(b)(1) or for failure to state a claim pursuant to Rule 12(b)(6). (D.N. 17; D.N. 24) For the reasons explained below, the motions to dismiss will be granted.

**I.**

The following facts are set out in the amended complaint and accepted as true for purposes of the present motions. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Pruitt worked for the CHFS at its Hazelwood Training Facility in Louisville, Kentucky, from 2009 to 2016. (D.N. 23, PageID # 168) On October 18, 2015, Pruitt suffered a slip-and-fall accident and used her FMLA time to heal. (*Id.*) Her doctor released her to return to work on December 1, 2015. (*Id.*) But in November 2015, Pruitt was involved in a head-on car collision, which exacerbated her slip-and-fall injuries. (*Id.*, PageID # 168-69) She received a "partial work release" from her doctor stating that she could continue to work with certain accommodations. (*Id.*, PageID # 169)

Pruitt submitted the work release to Tarron Ray, Hazelwood's human resources manager, and he provided Pruitt with an accommodation form to complete. (*Id.*) Ray immediately told Pruitt, however, that "he would not provide her [with] any accommodations and that she was wasting her time filling [the form] out." (*Id.*) Nonetheless, Pruitt filled out the form and returned it to Ray. (*Id.*) Ray called Pruitt the next day, reiterating that he did not "have any accommodations" for her. (*Id.*) Pruitt then contacted Cathy Cox, the CHFS's human resources director, and asked her to speak with Ray. (*Id.*) Cox called Ray, inquiring as to why he had refused Pruitt an opportunity to work with accommodations. (*Id.*) Immediately after that phone call, Ray called Pruitt, asserting that he "[ran] th[e] building" and "[would] let work who [he] want[ed] to [let] work." (*Id.*) Pruitt called Cox to inform her that she wanted to file a grievance against Ray, and Cox instructed her to follow the chain of command. (*Id.*)

2

In accordance with Cox's instruction, Pruitt contacted Sueellen White, the director of Hazelwood. (*Id.*) White told Pruitt that she was "not allowed to take [Pruitt's] grievance" until Pruitt talked with Ray directly. (*Id.*) White then placed a three-way call in a purported attempt to include Ray, but Ray was never reached. (*Id.*) Pruitt later learned that White and Ray were relatives and that White had instructed Ray not to take the call. (*Id.*, PageID # 170) As a result, Pruitt never had the opportunity to file her grievance. (*Id.*) Further, Ray directed security not to allow Pruitt back into the building. (*Id.*)

Despite Pruitt's request to continue working with accommodations, Hazelwood placed Pruitt on one year of unpaid medical leave. (*Id.*) Pruitt became homeless and destitute. (*Id.*) When she went to the unemployment office to file for unemployment benefits, she was told that she was not entitled to benefits because she was still employed by Hazelwood. (*Id.*) Pruitt applied for benefits again and was told that she had been fired for missing too many days of work. (*Id.*, PageID # 170) Pruitt appealed the denial of unemployment benefits, and an investigation revealed that Hazelwood and Ray had wrongfully terminated her. (*Id.*, PageID # 170-71) Pruitt received unemployment benefits based upon the result of the investigation. (*Id.*, PageID # 171)

After her termination and receipt of unemployment benefits, Pruitt found out that she was still considered to be employed by Defendants. (*Id.*) Pruitt was told to either resign or face termination. (*Id.*) She resigned in November 2016. (*Id.*) Pruitt filed charges of discrimination with the EEOC, and the EEOC subsequently issued Pruitt a right-to-sue letter. (*Id.*, PageID # 171-72)

Pruitt originally filed her complaint on a court-approved form, asserting discrimination claims based on gender and disability. (D.N. 1, PageID # 25-26) Defendants Hazelwood, CHFS, Klein, Feddersen, and White filed a motion to dismiss all claims against them for lack of subject-

matter jurisdiction or failure to state a claim. (D.N. 17)  After that motion was fully briefed (*see* D.N. 21; D.N. 22), Pruitt filed an amended complaint.³  (D.N. 23)  In the amended complaint, Pruitt asserted claims for discrimination based on race and gender under Title VII, hostile work environment on the basis of race and gender under Title VII, retaliation under Title VII, retaliation under 42 U.S.C. § 1981, and disability discrimination under the ADA.  (D.N. 23, PageID # 174)  Defendants then filed another motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), incorporating the arguments they made in their earlier motion and arguing that Pruitt's new race-discrimination and retaliation claims also fail.  (D.N. 24)

**II.**

The Sixth Circuit has recognized that motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) are distinct and involve different standards.  *See Mooneyham v. Equifax Info. Servs., LLC*, 99 F. Supp. 3d 720, 722 (W.D. Ky. 2015) (citing *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996)).

Hazelwood, the CHFS, and the individual defendants sued in their official capacities argue that they are entitled to sovereign immunity under the Eleventh Amendment.  (D.N. 17, PageID # 108-110; D.N. 24, PageID # 192-93, 201-03)  Sovereign immunity may "serve as a basis for a [Rule] 12(b)(1) motion to dismiss for lack of jurisdiction."  *Mooneyham*, 99 F. Supp. 3d at 722 (citation omitted).  "'[W]hile the Eleventh Amendment is jurisdictional in the sense that it is a limitation on the federal court's judicial power,' the defense 'is not coextensive with the limitations on judicial power in Article III.'"  *Id.* at 722-23 (quoting *Nair v. Oakland Cty. Cmty. Mental Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006)).  For instance, a state may waive Eleventh Amendment

---

³ Pruitt filed her amended complaint on June 13, 2018 (D.N. 23), within twenty-one days after Defendants filed their initial Rule 12(b) motion to dismiss.  (*See* D.N. 17)  Pruitt was therefore able to amend her complaint as of right.  *See* Fed. R. Civ. P. 15(a)(1)(B).

4

immunity. *Nair*, 443 F.3d at 474. And "[u]nlike subject-matter jurisdiction, 'the entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity.'" *Mooneyham*, 99 F. Supp. 3d at 723 (quoting *Nair*, 443 F.3d at 474).

Defendants also argue that all of Pruitt's claims must be dismissed for failure to state a claim pursuant to Rule 12(b)(6). (D.N. 17, PageID # 104-07, 110-16; D.N. 24, PageID # 191-97, 199-201, 203-05) To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true. *Id.* A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8 and will not withstand a motion to dismiss. *Id.* at 679.

Pro se pleadings are held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Yet "the lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). For example, "the less stringent standard for pro se plaintiffs does not compel the courts to conjure up unpleaded facts to support conclusory allegations." *Leisure v. Hogan*, 21 F. App'x 277, 278 (6th Cir. 2001). Additionally, the Court cannot "create a claim which [the plaintiff] has not spelled out in his pleading." *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). A pro se complaint must still "contain either direct or inferential allegations respecting all the

material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436-37 (6th Cir. 1988) (citation omitted). Ultimately, "[t]he Court's duty to construe a *pro se* complaint liberally does not absolve a plaintiff of the duty to comply with the Federal Rules of Civil Procedure by providing each defendant with fair notice of the basis of the claim." *Jones v. Cabinet for Families & Children*, No. 3:07-CV-11-S, 2007 WL 2462184, at *4 (W.D. Ky. Aug. 29, 2007) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

A.     **Claims Against Hazelwood and the CHFS**

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Although by its terms the Amendment applies only to suits against a State by citizens of another State, [the Supreme Court's] cases have extended the Amendment's applicability to suits by citizens against their own States." *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). Thus, "a state and its agencies may not be sued in federal court, regardless of the relief sought, unless the state has waived its immunity or Congress has expressly abrogated states' immunity." *LeBlanc v. Hagan*, No. 1:16-CV-00178-GNS, 2017 WL 2779490, at *6 (W.D. Ky. June 27, 2017) (quoting *Fleet v. Commonwealth of Ky. Cabinet for Health & Family Servs.*, No. 3:15-CV-00476-JHM, 2016 WL 1241540, at *3 (W.D. Ky. Mar. 28, 2016)).

It is well established that the "CHFS is an arm of the state." *Id.* (quoting *Fleet*, 2016 WL 1241540, at *3). And Hazelwood "is a state facility operated by" the CHFS. *Jones*, 2008 WL 4091651, at *1. Therefore, Pruitt's claims against the CHFS and Hazelwood may not proceed

unless Kentucky has waived or Congress has abrogated their immunity. *See LeBlanc*, 2017 WL 2779490, at *6.

1. **Section 1981 and ADA Claims**

Pruitt asserts claims under both 42 U.S.C. § 1981 and the ADA. (D.N. 23) "Kentucky has not waived its Eleventh Amendment immunity and Congress has not abrogated state sovereign immunity under section[] 1981 . . . ." *Ferry v. Commonwealth of Ky. Cabinet for Health & Family Servs.*, No. 3:17-CV-00525-TBR, 2018 WL 701287, at *2 (W.D. Ky. Feb. 2, 2018) (quoting *Sefa v. Kentucky*, 510 F. App'x 435, 437 (6th Cir. 2013)). And Pruitt brings her disability-discrimination claims under Title I of the ADA. (*See* D.N. 23, PageID # 173 (listing 42 U.S.C. §§ 12112-12117)) *See McCollum v. Owensboro Cmty. & Tech. Coll.*, No. 4:09-CV-00121-M, 2010 WL 1742379, at *2 (W.D. Ky. Apr. 29, 2010) (recognizing that those sections comprise Title I of the ADA). Pruitt cites no authority indicating that Kentucky has waived its immunity with respect to the ADA. *See Westermeyer v. Ky. Dep't of Pub. Advocacy*, No. 2:10-131-DCR, 2011 WL 830342, at *3 (E.D. Ky. Mar. 3, 2011) (noting that "immunity has not been waived" for suits under Title I of the ADA); *McCollum*, 2010 WL 1742379, at *3. Moreover, the Supreme Court has "invalidated Congress'[s] abrogation of the States' immunity to claims under Title I of the ADA." *McCollum*, 2010 WL 1742379, at *3 (citing *Garrett*, 531 U.S. at 374). The Court will therefore dismiss Pruitt's section 1981 and ADA claims against the CHFS and Hazelwood for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1). *See Ferry*, 2018 WL 701287, at *2; *see also Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993) (noting that the Eleventh Amendment "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments").

## 2. Title VII Claims

By contrast, "Congress acted validly under its Fourteenth Amendment Enforcement Clause powers to abrogate state sovereign immunity to Title VII claims." *Cox v. Shelby State Cmty. Coll.*, 48 F. App'x 500, 504-05 (6th Cir. 2002). The Eleventh Amendment therefore does not apply to Title VII claims. *See id.* at 505. However, "a Title VII claimant must exhaust [her] administrative remedies" "[p]rior to seeking relief in federal court on a claim of employment discrimination." *Bardwell v. Aerotek, Inc.*, No. 1:17-CV-00167-GNS, 2018 WL 2470995, at *2 (W.D. Ky. June 1, 2018). This Court has recognized that a plaintiff may exhaust her administrative remedies in two ways. *See Gray v. Wal-Mart Stores, Inc.*, No. 3:11-CV-367-H, 2012 WL 4212926, at *3 (W.D. Ky. Sept. 18, 2012). First, "a Title VII plaintiff explicitly may state the claim in the EEOC charge." *Id.* Second, "a plaintiff may satisfy the EEOC exhaustion requirement 'where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim.'" *Id.* (quoting *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998)). "When the EEOC investigation of one charge *in fact* reveals evidence of a different type of discrimination against the plaintiff, a lawsuit based on the newly understood claim will not be barred."[4] *Id.* (emphasis in original) (quoting *Davis*, 157 F.3d at 463).

Pruitt's EEOC charge of discrimination has only one box checked, which indicates that she was claiming discrimination based on disability. (D.N. 17-1, PageID # 119)[5] In her EEOC charge, Pruitt describes her discrimination claim as follows:

---

[4] While the Sixth Circuit has referred to this exhaustion requirement as jurisdictional, *see, e.g.*, *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001), more recent cases have determined that it is a statutory prerequisite to filing suit. *See Wrobbel v. Int'l Bhd. of Elec. Workers, Local 17*, 638 F. Supp. 2d 780, 790-92 (E.D. Mich. 2009).

[5] Generally, "a court may not consider matters outside the pleadings in a motion to dismiss." *Gray*, 2012 WL 4212926, at *2. But "where a plaintiff's complaint refers to documents that are later attached to a defendant's motion to dismiss, those documents are considered part of the pleadings."

> I was employed as a Patient Aide II by Hazelwood Facility from on or about January 15, 2009. From in or around October 2016, through in or around December 2016, I requested an accommodation, but my request was denied. No reason was given to me for my denied accommodation request. I believe [that] I have been discriminated against because of my disability in violation of the American[s] with Disabilities Act of 1990, as amended. I was wrongfully terminated. Hazelwood Training Fac[il]ity gave me [until] December 16, 2016[,] to return to full-time duties, but they let me go May 10, 2016[,] for missing to[o] many days of work.

(*Id.*)

In her amended complaint, Pruitt asserts claims of discrimination (and relatedly, a hostile work environment) based on race and gender and retaliation under Title VII. (D.N. 23, PageID # 174) But on her EEOC charge, Pruitt did not check the boxes for discrimination based on race or gender or for retaliation. (*See* D.N. 17-1, PageID # 119) Further, the description of Pruitt's claim makes no mention of discrimination based on race or gender. (*See id.*) *See Gray*, 2012 WL 4212926, at \*3 (dismissing religious-discrimination claim where the plaintiff "did not mention any events tending to show religious discrimination in the workplace on the EEOC charge"). While Pruitt does allege wrongful termination generally, she does not tie her termination to race or gender. Nor does she allege any facts suggesting a hostile work environment on the basis of race or gender. *See Taylor v. 3B Enters., LLC*, No. 3:13-CV-259-S, 2014 WL 4916334, at \*7 (W.D. Ky. Sept. 30, 2014) (distinguishing between claims based on discriminatory discharge and hostile work environment). And although "retaliation claims based on conduct that occurs after the filing of the EEOC charge can be reasonably expected to grow out of the charge[,] . . . retaliation claims based on conduct that occurred *before* the filing of the EEOC charge must be included in that

---

*Id.* Pruitt refers to her EEOC charge in her complaint (D.N. 23, PageID # 171), and Defendants attached it to their motion to dismiss (*see* D.N. 17-1). Therefore, it is appropriate for the Court to consider it at this stage. *See Gary*, 2012 WL 4212926, at \*2; *see also Thomas v. Cushman & Wakefield Inc.*, No. 3:08-CV-327-S, 2010 WL 583684, at \*2 (W.D. Ky. Feb. 16, 2010) ("[T]his Court may also take judicial notice of the EEOC charge without converting the motion to dismiss into one for summary judgment.").

charge." *Thomas*, 2010 WL 583684, at *2 (emphasis in original) (quoting *Strouss*, 250 F.3d at 342). Because Pruitt's retaliation claims appear to be based on conduct that occurred before the filing of her October 18, 2017 EEOC charge (*see* D.N. 23, PageID # 170-71), her failure to include the claims in the EEOC charge constitutes a failure to exhaust. *See Strouss*, 250 F.3d at 342. Pruitt has therefore failed to exhaust her administrative remedies with respect to her Title VII claims, and the Court will dismiss these claims without prejudice. *See Bardwell*, 2018 WL 2470995, at *2.

**B.     Official-Capacity Claims Against Klein, Feddersen, and White**

Klein, Feddersen, and White are employees of the CHFS. (D.N. 23, PageID # 167) The Eleventh Amendment "also bars suits for monetary relief against state officials sued in their official capacity." *Thiokol Corp.*, 987 F.2d at 381. The Court will therefore dismiss Pruitt's official-capacity claims against Klein, Feddersen, and White to the extent that they seek monetary relief. *Fleet*, 2016 WL 1241540, at *4 ("Plaintiffs' claims against [CHFS employees] in their official capacities are barred by the Eleventh Amendment . . . to the extent they seek monetary relief.").

However, the amendment "does not preclude actions against state officials sued in their official capacity for prospective injunctive or declaratory relief." *Thiokol Corp.*, 987 F.2d at 381 (citing *Ex parte Young*, 209 U.S. 123 (1908)). But *Ex parte Young* "does not supply a right of action by itself." *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 906 (6th Cir. 2014); *see also id.* (noting that "the [Supreme] Court allows litigants to use *Ex parte Young* to sue a state official to enforce a federal statute when the statute contains a private cause of action"). Pruitt's amended complaint seeks to enjoin Defendants from (1) discriminating against her and others on the basis of disability, (2) refusing to adopt and implement a policy of nondiscrimination against

10

persons with disabilities, and (3) from failing to make reasonable modifications to policies and procedures to ensure that goods and services are afforded to individuals with disabilities. (D.N. 23, PageID # 177) The Court notes at the outset that these requests appear limited to the issue of disability discrimination under the ADA. (*See id.*) In any event, Pruitt relies on three statutes in her amended complaint: 42 U.S.C. § 1981, Title VII, and the ADA. (*Id.*, PageID # 176-77)

"An official capacity lawsuit against [state actors] for constitutional violations, such as race discrimination, cannot be brought under § 1981," however.[6] *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008); *see also McCormick v. Miami Univ.*, 693 F.3d 654, 660 (6th Cir. 2012) (reaffirming *Grinter* and holding that district court "correctly dismissed the § 1981 claims against the individual defendants in their official capacity"). And as discussed above, Pruitt cannot maintain any of her Title VII claims because she failed to exhaust her administrative remedies.

Pruitt's reliance on the ADA is similarly unavailing. To the extent that Pruitt seeks injunctive relief on behalf of others, it is well settled that she lacks standing to do so. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[A] plaintiff generally must assert [her] own legal rights and interests, and cannot rest [her] claim to relief on the legal rights or interests of third parties."). The Court additionally finds that Pruitt lacks standing to seek injunctive relief on her own behalf. A plaintiff must have standing to advance a claim for an injunction. *Campbell v. Univ. of Louisville*, 862 F. Supp. 2d 578, 584 (W.D. Ky. 2012) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983)). In particular, "to have standing to seek an injunction against purportedly illegal future conduct by a state official, a plaintiff must show a 'real and immediate threat' of injury; past

---

[6] Putting aside Pruitt's conclusory allegations, she has also failed to allege facts in her amended complaint that would support a claim of discrimination based on race. (*See* D.N. 23) Therefore, even if she had brought her discrimination claim under 42 U.S.C. § 1983, it would still be dismissed for failure to state a claim. *See Faller v. Rogers*, No. 1:05-CV-167-M, 2006 WL 314554, at *7 (W.D. Ky. Feb. 8, 2006).

exposure to illegal conduct, by itself, is insufficient." *Id.* (citing *Lyons*, 461 U.S. at 102-03). Pruitt has not alleged that she would be working for the CHFS in the future. Instead, she claims that she suffered discrimination in her prior employment with the CHFS. (D.N. 23, PageID # 173) But "past exposure to illegal conduct" is insufficient. *Campbell*, 862 F. Supp. 2d at 584. Because Pruitt has not shown a "real and immediate threat" of injury, she lacks standing to pursue injunctive relief. *See id.* The Court will therefore dismiss Pruitt's claims for injunctive relief against Klein, Feddersen, and White in their official capacities.

C.     **Individual-Capacity Claims Against Klein, Feddersen, and White**

Pruitt also asserts section 1981, Title VII, and ADA claims against Klein, Feddersen, and White in their individual capacities. (D.N. 23, PageID # 165, 174) The Sixth Circuit has held, however, that "§ 1983 is the exclusive mechanism to vindicate violations of § 1981 by an individual state actor acting in his individual capacity." *McCormick*, 693 F.3d at 661; *see also id.* (affirming district court's dismissal of § 1981 claims against individual defendants acting in their individual capacity). And as Defendants correctly point out (D.N. 24, PageID # 204), "neither the ADA nor Title VII provides for individual liability." *Bardwell v. Shoney's Rest.*, No. 5:18-CV-31-GNS, 2018 WL 1660827, at *2 (W.D. Ky. Apr. 5, 2018). In fact, the Sixth Circuit has "rejected the concept of individual liability, unless the individual otherwise qualifies as an 'employer,' under Title VII . . . [and] the Americans with Disabilit[ies] Act (ADA)." *Hawkins v. Miller*, No. 3:07-CV-383-H, 2007 WL 3400975, at *2 (W.D. Ky. Nov. 13, 2007); *see Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 404-05 (6th Cir. 1997). Pruitt has not put forth any argument that Klein, Feddersen, and White qualify as "employers" under either Title VII or the ADA. *See* 42 U.S.C. § 2000e(b) (defining "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person"); § 12111(5)(A) (defining "employer" as "a

12

person engaged in an industry affecting commerce who has 15 or more employees . . . and any agent of such person"). Rather, Pruitt alleges that Klein, Fedderson, and White were (like her) employed by the CHFS. (D.N. 23, PageID # 167) The Sixth Circuit has made clear, however, that "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." *Wathen*, 115 F.3d at 405; *see also id.* at 404 n.6 (noting that "[t]he liability schemes under Title VII, the ADEA, and the ADA are essentially the same in aspects relevant to this issue [of an employee/supervisor's individual liability]"). The Court will therefore dismiss all of Pruitt's individual-capacity claims against Klein, Feddersen, and White.

**D.     Remaining Claims**

Confusingly, the amended complaint states that Pruitt "does not state a claim for the intentional infliction of emotional distress," but then goes on to argue that she should be compensated because she "qualifies under all four (4) elements." (D.N. 23, PageID # 174) An IIED claim under Kentucky law consists of the following elements:

> (1) the wrongdoer's conduct was intentional or reckless;
> (2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality;
> (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and
> (4) the distress suffered must be severe.

*Bargo v. Goodwill Indus. of Ky., Inc.*, 969 F. Supp. 2d 819, 826 (E.D. Ky. 2013) (citing *Osborne v. Payne*, 31 S.W.3d 911, 913-14 (Ky. 2000)). To the extent that Pruitt asserts an IIED claim, it appears that she does so seeking money damages. (*See* D.N. 23, PageID # 174) Of course, Hazelwood and the CHFS are immune from suit, *see supra* Section II.A, as are the individual defendants sued in their official capacity for money damages, *see supra* Section II.B. *See also McCollum*, 2010 WL 1742379, at *4 ("Kentucky has not waived its immunity from suit in federal court for common law tort claims."). Any possible claim for IIED has not been sufficiently pled

13

in any event, as Pruitt has not identified any outrageous conduct on the part of the defendants or alleged any severe emotional distress. *See Bargo*, 969 F. Supp. 2d at 828 (dismissing IIED claims where the plaintiffs did not "offer[] a single factual allegation[] about the distress they suffered"); *Crouch v. Rifle Coal Co.*, No. 5:08-299-JMH, 2009 WL 3806404, at *10 (E.D. Ky. Nov. 13, 2009) ("This is a very high standard to satisfy. For example, Kentucky courts declined to find that a nurse [who] told a patient who had just delivered a stillborn baby to 'shut up,' or a citizen who erected a billboard in his yard declaring that his neighbor was a child molester, acted outrageously, intolerably or 'beyond all decency.'" (citations omitted)).

The only claims remaining in this action are the claims asserted against Defendant Ray, who until recently had not been served with process. Defendants urge the Court to "*sua sponte* dismiss all claims against [Ray] because the claims against him fail for the same reasons the claims against the other individuals fail." (D.N. 17, PageID # 104) "[A] district court may, at any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). But the Sixth Circuit has cautioned that "dismissal under Rule 12(b)(1) (as opposed to Rule 12(b)(6)) is appropriate in only the rarest of circumstances where . . . the complaint is deemed totally implausible." *Id.* at 480. The Court previously determined that this action was not so frivolous as to warrant dismissal under 28 U.S.C. § 1915(e)(2). (D.N. 4) Moreover, it appears that Ray has now been served. (*See* D.N. 30) The Court therefore declines to *sua sponte* dismiss the claims against Ray at this time.

## III.

For the reasons explained above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Defendants' joint motions to dismiss (D.N. 17; D.N. 24) are **GRANTED**. All claims asserted in this action against Defendants Hazelwood Training Facility, Cabinet for Health and Family Services, Jay Klein, Beth Feddersen, and Sueellen White are **DISMISSED**. The Clerk of Court is **DIRECTED** to terminate Hazelwood Training Facility, Cabinet for Health and Family Services, Jay Klein, Beth Feddersen, and Sueellen White as defendants in the record of this matter.

October 15, 2018

**David J. Hale, Judge**
**United States District Court**